JORGENSON,
Judge, dissenting.
I respectfully dissent. In my view respondents, the defendants in this medical malpractice action, should not be allowed yet another opportunity to examine petitioner, as she has already undergone more than three eleetromyograms,[1] which are highly invasive diagnostic procedures.
Petitioner sustained nerve and muscle damage when, during total hip replacement surgery, respondents dropped a trial prosthetic head into her pelvic cavity. Removal of this head was not done until fourteen months later. While preparing for trial, respondents examined petitioner, but their expert chose to perform tests on only one of the four muscle groups that had shown abnormalities during earlier testing. Now respondents want to perform still another elee-tromyogram to test the muscle groups they previously ignored.
Petitioner was under the care of respondents for more than six years; her treatment involved over eighty-six visits to fourteen different doctors, all of whom were under the control of respondents. This request, coming just eight days before the close of discovery, should not be granted. See Loveland v. Kremer, 464 N.W.2d 306, 309 (Minn.Ct.App.1990) (denying second independent medical examination when both doctors practiced in the same specialty, the same injury was to be evaluated, and the second exam was not part of a comprehensive examination; dissatisfaction with the first independent exam falls short of the good cause requirement).
Respondents argue that, because their neurologist did not examine the same muscle groups that petitioner’s neurologist examined, the two experts will be talking about differing conditions regarding the petitioner. That may be the case. However, but for the failure of respondents’ expert to do a complete exam in the first instance, petitioner would not have to undergo this invasive procedure. The difference in the results of the exams can be explained through testimony and does not require still another exam of petitioner. Because we are speaking of damages and not liability,[2] requiring this additional procedure is simply too much.

. This procedure involves recording muscle responses to electric stimulation by inserting needle-shaped electrodes into the muscles. 2 J.E. Schmidt, Schmidt’s Attorney’s Dictionary of Medicine E-47 (1993); Kenneth N. Anderson & Lois E. Anderson, Mosby's Pocket Dictionary of Medicine, Nursing, & Allied Health 355 (2d ed.1994).

. I assume respondents will concede that first dropping, then leaving, a trial prosthetic head within the pelvic cavity is not within the medically accepted standard of care.